■ GENERAL STEEL FABRICATORS, INC., Plaintiff, v FIREMAN'S FUND INSURANCE COMPANIES et al., Appellants, and JAMES J. HOULIHAN & ASSOCIATES, INC., Respondent. [596 NYS2d 215] — Casey, J. Appeals from an amended order and an amended judgment of the Supreme Court (Prior, Jr., J.), entered November 7, 1991 in Albany County, upon a decision of the court in favor of plaintiff.

In a nonjury trial, Supreme Court awarded judgment to plaintiff against defendant insurance companies (hereinafter defendants) upon a finding that the retrospective calculations of premiums and refunds were to be made separately for each of three policies of workers' compensation covering the years 1983, 1984 and 1985, taking into account loss experiences arising only during the period of the specific policy. Such calculation resulted in a refund of advance premium pay-

ments due plaintiff following cancellation by defendants mid-year into the third policy period.

Defendants contended that all three policies were linked by an endorsement signed by plaintiff at the beginning of the first policy period. The "Retrospective Premium Endorsement —Three Years—Plan D" (hereinafter the endorsement) expressly provided for retrospective calculations taking into account loss experiences arising over the three-year period and expressly stated that the endorsement applied to the initial policy and any renewals thereof during the three-year period. Calculations based on the endorsement showed additional premiums due from plaintiff. Plaintiff admits that the endorsement was signed by Robert Monroe, its secretary-treasurer, but claimed at trial that Monroe executed the endorsement only after defendant James J. Houlihan & Associates, Inc. (hereinafter Houlihan) assured him that the endorsement would not be enforced according to its terms, that the endorsement was a mere formality and that the retrospective calculation for each policy would take into account claims arising during only the one-year period of that policy. Finding that Houlihan obtained Monroe's signature upon the endorsement through negligent representations while acting under the authority that defendants had vested in him as their agent, Supreme Court found in favor of plaintiff in the amount of $78,280 with appropriate interest. In its amended order and amended judgment, however, Supreme Court dismissed the cross claim interposed by defendants against Houlihan. It is from this latter determination only that defendants appeal.

Defendants contend that Houlihan, as their agent, represented to plaintiff's secretary-treasurer (Monroe) that the endorsement would be of no effect, legal or otherwise, and in so doing acted without the authority of defendants, rendering Houlihan liable on defendants' cross claim. Supreme Court rejected this argument and we find no reason to disturb its determination.

Defendants forwarded the endorsement to Houlihan as an enclosure to a memo by Patricia Schappert[1] which Houlihan gave to Monroe. After reading it, Monroe refused to sign the

---

1. The Schappert memo was sent by defendants to Houlihan with the policy and four extra copies of the endorsement. It stated, "All copies of this endorsement must be signed by insured and the 4 extra copies must be returned to me [Schappert] within 10 days, so I can complete filing requirements with the Bureau. You will note that the basics shown are different from the quote—these are the filing figures for compliance with Board, not the TPC basics."

endorsement and requested further explanation, which Houlihan sought from defendants. When Houlihan contacted defendants for additional information, Schappert's letter of January 31, 1983[2] was forwarded to it and it sent a copy to Monroe. When Monroe was still not satisfied with the explanation contained in this letter, he sent a letter dated February 7, 1983 requesting further information. In response, a letter of February 17, 1983 from Cliff Vanderhave was sent to Monroe by defendants. All of these communications resulted in Monroe signing the endorsement and returning it to Houlihan, who forwarded it to defendants. The evidence in the record establishes that Houlihan was actually nothing more than a conduit for the information that flowed between defendants and Monroe. Although Supreme Court found that Houlihan made certain negligent representations, the record establishes that in making those representations Houlihan relied upon information supplied by defendants, particularly the Schappert memo. As found by Supreme Court, everything that Houlihan did was done pursuant to the authority vested in it by defendants and Houlihan acted at all times within its capacity as defendants' agent. Based upon our review of the evidence in the record, we conclude that Supreme Court correctly dismissed defendants' cross claim against Houlihan.

Weiss, P. J., Mikoll, Mercure and Mahoney, JJ., concur. Ordered that the amended order and amended judgment are affirmed, with costs.

---

2. The Schappert letter dated January 31, 1983 addressed and explained the concerns that Monroe had voiced to Houlihan.